Next case is 5-17-0235X, Croson versus Lugic. Whenever you're ready. Please be seated. Please the court, counsel. My name is Tyler Dealy from the Prince Law Firm in Marion, Illinois. I represent Paulette Croson, the plaintiff appellant. There are essentially two issues in this case. The first is whether the plaintiff has properly pled a cause of action under the Animal Control Act, and then second, whether the trial court's grant of summary judgment was proper as to the negligence count of plaintiff's complaint. As to the Animal Control Act, that act states that the owner of an animal is liable for the damages caused by that animal if it attacks, attempts to attack, or injures someone who's peacefully on their property. So there's no evidence that the dog attacked or attempted to attack. That's correct, Your Honor. So we're left to decide the context of what is meant by injures. Correct. Right? I think moving close to the person who initiated petting the dog didn't in and of itself cause any injury, but the resulting fall is what you're suggesting because the dog moved closer to her as she fell, and that's why the dog caused the injury. Right. And it's important to note that we're here on a 2615 motion to dismiss, so it's whether we accurately pled under the statute, and that is what we're pledging. That's correct. But I've cited two cases, and then there's the Bailey case that was cited by the defendant that we need to discuss. The first is McAvoy, and that's the case that kind of sets out that there are two separate. There's the attack and then there's the injury. That case involved the mother-in-law of the dog owner went over to the nurse or I believe it was her daughter's house and saw that the dog was hungry, went to feed and water the dog. As she was doing that, the dog ran between her legs and caused her to fall and she was injured. But there we have an action by a dog actually moving into the direction of the person and going through the person's legs. That was the proximate cause of the injury, right? Right. And the way I bring that into this case is that the dog moved into her, causing her to step back and off the porch. But not in an aggressive way. This dog did not step toward your client. Correct. But aggressive movement is not required. No, but, I mean, approximate cause surely is required. It was. So it's just as Barbera has just said, just your client initiated the petting of the dog. I think the dog came up to her. And, again, we're dealing with the pleadings. I don't know who replied, but she invited the dog over. The dog came up to her and she scooped down to pet the dog. Right. And I think the testimony was that she had been at the house with the dog and she were familiar with each other and on friendly terms. Averton visited prior to, because she was caring for the woman's grandmother at the house as an in-home nursing employee. And that everyone that is remotely familiar with a dog knows that if you're familiar with a dog and it's not on a leash or in a kennel and it comes up to you, your initiated, it comes up to you doesn't necessarily mean, and I don't think you pled that in its initial approach to this woman, it got so close that it forced her off the step. It was that the dog came close to her. She bent to pet it. As she was petting it, it moved closer to her. She stepped back and fell off the edge of the porch. Yeah, the way the plan is that the dog moved into her, causing her to fall off, causing her to lose her balance and fall off the porch, which is similar to the McAvoy case. The dog wasn't aggressive, but it ran between her legs. The court found that it was immaterial that whether the dog bumped her, tripped her, but just what was important was that it caused her to fall in that case. The Taylor case, again, doesn't involve aggressive action by the dog, but the dog ran out into the road. The plans in that case were to avoid the dog and was injured. What was the specific negligence? I know I'm skipping to negligence, but I want the act of how she fell. What did you plead on that? She stepped off of the porch into a rock garden that was below. But I wasn't clear on how she got from the porch to the rock garden. Did she just twist an ankle? Step backwards from the dog moving into her. It was just the movement of her. It was just the movement, stepped backwards, lost her balance. Right, so she just stepped backwards and fell. Correct. And she had been on this porch numerous times in the past. That's correct. The court cited in their decision, the Bailey v. Bly case, essentially a grand summary judgment because that dog was an inert or passive force. The facts of that case were the dog was just lying on some steps and the plant tripped over the dog. There was no movement on behalf of the dog whatsoever, and that's what is meant by inert or passive force. Here we actually have active motion by the dog causing an injury. And I would stress that based on the pleadings, we appropriately pled within the Animal Control Act. As to negligence, I believe the best case to look at is the Ward v. Kmart case. I think this is a distraction case. In that case, the plaintiff walked into a post while exiting the Kmart store. But it had a big mirror or something. Exactly. She was carrying a big mirror so that, and I apologize, I don't recall whether the plaintiff was a man or a woman. Wasn't that case all about foreseeability and duty and reach? It is, and I think that we have that foreseeability here. I think it was foreseeable that somebody could be on that porch and be distracted by the dog that was out at that time. Yeah, but that case had dealt with those big pillars. Correct. Where Kmart had taken an active, you know. You know, you go ahead. Yeah, my analogy would be that the rock garden would be the pillar and the dog would be the mirror, if that makes sense. Judging by your expression. No, well, as I read Kmart, the issue there was, did Kmart foresee that somebody might bump into those big red pillars? And many of us, I think, are still scratching our head about that. Foreseeing that somebody might have merchandise and be, you know. Yeah, and bump into a big red pillar. I mean, I wonder about Target and its big balls out there. Well, I guess that's kind of my argument. The pillar itself wasn't it. In here, the rock garden, the steps itself aren't it. The dog was present as well and was a foreseeable distraction to people on that porch. But the law of foreseeable distractions still requires some proximate cause. I mean, I'm thinking of a case that unfortunately I wrote here where I was reversed by the Supreme Court and dealt with the foreseeability of the danger and the distraction. Yeah, and I didn't tie that together very well, Your Honor. What I was meaning to say is that it's foreseeable that somebody may be distracted by that dog and step backwards and fall off the porch into that rock garden. Even if, as Justice Barberos was saying, the dog is known, is friendly, there's never been an aggressive act by the dog between the health care worker and the dog, even under those circumstances you would say that the dog is a distraction to her? Sure. And it's difficult to parse between the animal control act and the negligence, but I guess to analogize again to the Kmart case that there wasn't anything wrong with the mirror, it's just that it was distracting her. And that's, I think, the same situation with the dog. So under your theory, anyone who owns a dog and has a deck, for example, an unprotected deck or porch, could be liable... For holding steps? Yeah, whatever. Anybody who owns a dog could be liable for negligence under your pleading. I think that's correct. Well, one of the things that Kmart discusses is the burden upon society if we impose such a duty. And it seems to me that your theory would impose a tremendous burden on society if we were all negligent for that. Well, I don't think it's... Anybody that causes an injury on flat ground, that's solely an animal control act issue. Here the burden on the ruseages would be to put up some sort of handrail, which I don't... But you're saying that would be the burden on everybody who owns a dog or a cat. I would be okay if this were a cat. Those cats, they'll come right at your feet. No, but seriously, the issue we discussed in Kmart extensively was the burden that you place on society when you balance the duties that are owed in a negligence case. And it would seem to me that if anybody who owns a dog could be liable because they have a flat porch or a step or whatever, that's a pretty heavy burden for us to say that there's some duty such that the case should not be dismissed. Well... Go ahead. There was no testimony, from my understanding, there was no testimony that the dog actually touched this woman that caused her to move or be propelled backwards. The dog simply moved into her personal space and she took a step back. I don't think that it specifically says that she touched him. But moved into her and causing her pain. So it wasn't like the dog shoved her. No, I don't think so. The dog got at her and she had to step back. There's not, but again, we are here on a motion to dismiss based on the pleadings. So I don't know that that's a valid consideration with respect. It would be if we were here on a motion for summary judgment. But I believe it's a motion to dismiss. Are there any other questions? I believe I've said my piece. Thank you. Thank you. My name is Phillip Palmer, Jr. I'm here today representing the FLEs, Bob and Pam. I'm not going to go over the facts. It's apparent from your questions that you guys are very familiar with them. And I'll start off by talking about the Animal Control Act because that's the first part that's addressed in our pleadings. Before I get into that, I just want you to keep in mind throughout my discussion the testimony of Ms. Ruchage. Because it is imperative to kind of deciding these issues, at least from my perspective. Council had noted that the Animal Control Act portion or count was dismissed on a 2-6-15 motion. I think we would like you to confine your ruling based upon what is in that pleading. But Illinois law clearly does allow courts to take into consider matters that can be taken in judicial notice as well as judicial admissions. Here we're dealing with a number of judicial admissions that the court can consider in ruling on a 2-6-15 motion. Admissions outside of the pleading? Yes. So any judicial admissions that are on the record. So I believe a deposition testimony in a court case that we incorporate into our pleadings can be considered by a judge as long as they meet the law to become judicial admissions, which are deliberate and clear statements made by a party about concrete facts within that party's knowledge. And in this case, we have some clear testimony. When asked about the dog pushing her off the porch, did you push me off the porch? No, she did not push me. No. Did anything on the porch cause your fall or contribute to your fall? No. As has already been discussed, she was familiar with the porch and things like that. And that gets into the evidence a little bit. But I just want to kind of focus my first part here on the Animal Control Act because essentially what plaintiffs have brought before the trial court was the case that presently sits before you. A dog is standing next to a person passively, is sitting there. A petting interaction occurs, and the dog moves closer in space to the appellant, Ms. Platon. And as a result of that movement, she claims that she readjusts her balance, and part of her foot slips off the porch and she falls. Well, in that situation, there is no attack. There is no provocation. There is no aggressive maneuver by the dog, which I think is clearly what the Act has been legislated to prohibit or to try to curb. We have a situation where the dog is actually acting completely appropriately, exactly how we would want a dog to act, right? It's returning affection to someone who is not its owner. That's how we want dogs to interact with society. That's exactly what this dog did in this case. So to hold an owner liable for the dog acting properly under the circumstances seems to fly in the face of the purpose of the Animal Control Act, which is to curb bad behavior by animals. I think we can all agree at least on that position. The court in this case gave the plaintiffs opportunity to re-plead. They did. The only language that was changed when they re-pled was they added the word caused to their pleading, no significant change. And so the court, based upon the facts from before today, felt that it was appropriate to be dismissed because they didn't feel like it was an Animal Control Act claim, that the actions that were pled would fall under that Act. We completely agree with that, and we ask you guys to affirm that. Now as to the negligence claim, the negligence count is a claim based upon essentially a failure of the users to have either a railing or a failure because they had rock as their landscaping, which I think is fairly common in southern Illinois, but as well as not having a railing on their front footsteps. I think the important facts to note about this negligence claim, I think what the court relied upon in his ruling was the familiarity of the plaintiff with this particular set of stairs in this area. She had been up and down the stairs at least 20 times. She testified to that. She testified there was no defects, no loose boards, no broken steps, no different distances or something in the steps that would contribute, and she admitted that in her deposition testimony that no part of the actual physical structure caused or contributed to her fall. So that's not an issue. What the plaintiff has done because of that testimony is said, well, there's a distraction here, and the dog is acting as the distraction, and that my clients should have been able to foresee that the act of petting a dog near or on the porch, on the front step of the porch, could have resulted in her falling off the steps. I just don't make that connection. I don't see how a reasonable, average, ordinary person could ever. I'm an attorney. I don't think I could ever foresee that one, you know, just the act of petting a dog would. Now, absolutely, if the cases we've seen before, McElroy, if the dog's running and jumps on someone, the dog runs through someone while they're going up the steps, the dog bites someone, those are all things that we understand to be aggressive or overt maneuvers that could contribute or cause an injury, and I think that's what the act entails. In this case, we have a very passive dog who simply moves closer so that the petting will continue. I need to interrupt you because I'm perplexed by your argument about these admissions. I need to go back. Of course. I thought, so you're saying that this was dismissed solely under 2-615? No. Well, the Animal Control Act version was. Okay. We followed up to dismiss for that part. But the negligence case. It was mostly for summary judgment. Right, okay. Yeah, and I apologize. No, maybe I misunderstood you. They were dismissed at two different times. Right. So the negligence claim was initially dismissed, and then it was refiled with the Animal Control Act included, and then we followed the motion to dismiss under 2-615. But under 2-615, it's not a 619 motion where there's a defect in the pleading. The 615, I don't think contemplates, at least under the statute, all of these extraneous depositions and things. If you would have wanted to do that on a 2-615, you would have filed it under 2-619 because 619 allows you to bring those depositions and things like that into play, right? That's true, Your Honor. I mean, was this a 619.1 motion? Was this a combined motion? I don't believe it was, Your Honor. I don't. Because 619 clearly says that you can present affidavits under 619C. But not so under 615. 615 is just you have to show where there's a defect in the pleading. True. And in this case, I believe that there is a defect in the pleadings. I don't think the court has to be constrained to that. And I would, just so you know, I didn't cite it in my brief, and I should have. But there is a case. It's K. Okay. I'm sorry. If you haven't cited it, the question in my mind is whether you've given it to the other side first and whether you filed a motion with us to argue it. Before you even mention it, I'm going to ask you, did you file a motion? I haven't filed a motion in regards to this, no, Your Honor. But it is mentioned in my brief. It is or it is not? What judicial omissions are, yes. No, but the case that you want to argue. No, it is not. It wasn't discovered until at the hearing. Okay. Well, just barbarous. It's up to his discretion whether. And the only reason I brought it up, Your Honor, was because you asked the question about whether or not it's specifically on point, and that's the only reason I bring it up. On what issue, sir? On whether or not a judge can use judicial omissions in determining a 2615 motion. Okay. Well. If you've not filed a motion and you've not presented it to the other side for further consideration at this point, I suppose at best you can ask a leave to a minor. I don't mind if he argues it as long as we give the other side the opportunity to respond. Obviously, we would have no problem with that. So I don't mind if he gives me the citation. I would be delighted to have it. Is this a new case? It's a 2010 case. I'll be honest. I don't know how it was missed. It should have been included, and I readily admit that. So I apologize. It is K. Miller Construction Company, Inc. v. McGinnis. It's 238 Illinois 2D 284, 2010. Okay. And the portion I'm pulling out is on page, it would be 291. It says in ruling on a section 2615 motion, only those facts apparent from the face of the pleadings, matters in which the court can take judicial notice and judicial omissions in the record may be considered. And so it allows those things to be considered. However, maybe that really isn't an issue in this case because, to be honest with you, I believe, and the reason we filed a 2615 motion is because it's apparent, based upon what was pled in the pleadings, that this isn't a cause of action under the Animal Control Act. And the main issue was, and what the court placed in their order, was that there was no facts alleged that showed an over or aggressive action or an attack on the plaintiff. And that was why we filed the motion. And this is kind of a side note because I think that the judge had the ability, if he did, but that wasn't under his order. His order was based solely on the fact that they didn't plead any type of action that showed the dog caused the injuries. In other words, an over or aggressive action. As I'm sitting here, I'm just curious, listening to you, why you didn't file the summary judgment or 619 on both counts? Why you made a selection like that? I think that we were... I'm putting you on the spot. Well, I think we most likely were trying to get a more definite and clear picture. I mean, this was... Keep in mind, this was a count that was brought in after depositions. So this was not... When this case started out, this was just a negligence case. Somebody fell off a horse and they said we should have had a way out. And that's what it was. But after a deposition testimony, this count came out of kind of the woodworks. And so I think what we were trying to do is get some clarity on the issue, have them replete full facts so we could kind of see, okay, is there an action here that we need to be worried about or something that we're missing? And that didn't happen. And the judge agreed with us that under what they had pled, there was a defect and that it wasn't enough to meet that burden under the ACA. And so it stopped there. But then there were repletings. They allowed repletings. So at some point, you had to have felt like, okay, enough is enough. Well, yeah. So there was... The court allowed initially a leave to mend. There was, and I noted it in my brief, the actual language change. It basically wasn't. It was just one paragraph was reworded. And the court at that point ruled to dismiss with prejudice. And the plaintiffs didn't request any opportunity to amend at that point. So they did waive their ability to amend at that point. They didn't ask for that in their relief when they responded to our recall. With prejudice is with prejudice. I mean, without prejudice usually is grants leave to amend. Right. And so I think... So with prejudice, how do they forfeit that? Well, they didn't... Okay, well, that's not really important. It's really not. The focus there, I think, was that the court felt that they're not able to plead the overt act or the aggressive act that's required under the act. And that a dog being petted and stepping closer to somebody and in no one's mind could contemplate a cause of action under this act. And so because of that failure, that defect in the pleading, the court dismissed it, and I think it was appropriate. And we're asking that to be upheld. Back to the negligence claim, though, essentially the idea that the dog is acting as a distraction, I think the case on point that I want to emphasize to you today is the Bruns v. City of Centralia. That's the case I was reversed on. Was that the one? Yeah, that's the one. I had to pull it out of my head. That's the one. Well, maybe it's a bit of a sore subject. No, no, no. I think it's a good case. It is a good case. And to be honest with you, it's a very thorough case that addresses, it lists within that case approximately four other dog animal act control cases, or pardon me, distraction cases and talks about those. And what the Supreme Court held in that action was pretty basic. It was that if the plaintiff is distracted on their own volition without something else causing the distraction, an outside force causing the distraction, they can't recover. And in this case, the decision of the plaintiff to reach down and pet a dog cannot be considered a distraction under Bruns because it was of her own volition. Even if the dog approached her and sat down next to her and wanted to be petted, she didn't have to do it. Or even if she was petting it, she could have turned her vision and looked and readjusted her step. You can do that. That's not a complicated thing. Where we see issues are the cases that that court mentioned where we have issues where plaintiffs are presented with addressing one thing immediately because it requires immediate attention and something else happening to them. The instances they give are someone putting up a billboard and there being a low-hanging electrical wire and while they're focusing on being on the scaffolding and putting that up, they touch the wire. Or the Kmart case where you have a defendant who is selling goods. You have people who are going to be obviously interacting through the one entrance and having the foreseeability of knowing that people are going to have things in their hands. The court in that case leads on things where people are undergoing tasks. Well, this isn't really a task. No one is asking them to do that. They're not working. It's not something that requires a lot of mental cognition to pet a dog. And so to stretch that case or to stretch this case and say that was a sufficient distraction I think is not proper under Bruns and what that case stands for. Keep in mind in Bruns it was the case where someone just wasn't watching where they were stepping and tripped over a raised sidewalk. And she was on her way to the eye doctor. She was on her way to the eye doctor, which is not really addressed in the Supreme Court's opinion. Well, she was on her way to the eye doctor. And it was a well-known defect, but there was a defect. It was a well-known. It was a well-known. She'd been down the path many times. She did. She'd been there nine times. She had been through, in this case, kind of the same thing. But the thing is, is both cases just are, to me, are on point. It's someone not focusing on where they're placing their steps. And that's what happened here. We had someone who went to move her leg, whether she's readjusting her balance or whether she's just changing her stance. She has her foot halfway on, halfway off, and she slips and falls. But it's not a situation where there's an immediate objection. But if you have to prove negligence, you don't get anywhere unless you can show there's a duty. That's true. Right? Bruns is not about a duty. It's not. It's the distraction case.  Walmart or Kmart is the duty case. That's right, Your Honor. And I haven't touched on duty in this case because... Well, how do you get to anything in negligence if you don't talk about duty? You've got to have duty plus a breach, approximate cost, damages. So the duty under Illinois law for homeowners is to basically protect those who come onto the property from known defects or make them aware of the defects or of foreseeable events which could cause injury, basically. And that's why initially when I started talking about negligence, I talked about the foreseeability part. In this case, I don't think there's... You can get close to a duty because we know there's no defects. That's been settled. We've had testimony from the plaintiff on that. If we want to say that not having a whaling is a defect, then it's an open and obvious defect that she traversed 20 times without issue prior to this. So there can't be distraction. So she had ample opportunity to discover for herself any flaws and it was never relayed to the homeowners. The homeowners obviously never knew of any because it's our position that there weren't. And then the foreseeability of it, the foreseeability that someone wouldn't navigate a set of stairs that they've been able to navigate before with due care and reasonably. Were these stairs? I thought you were standing on a porch. Okay. So the way this works is there were stairs that led up to a front porch and she was standing on the top step, which was level with the porch. So that top step came up level with the porch and then it connected. But she was kind of on that front step, which is why she was able to step off and fall. She's not fully on the porch yet, but she's on the same level as the porch. So the point being is, real briefly and to kind of tie it all together, is that there's no defects that are alleged. The duty here would be to protect against no defects with her arm injury and to let her make her way or anything. And for them to say, well, there's no railing when it's obvious or to say, hey, don't step off the porch while you're petting our dog, I think that's a pretty high burden to put on a homeless person. All right. Thank you for your time. Thank you. I'll be very brief. With regard to judicial admissions, I'm a little behind the eight ball on that case. I haven't had an opportunity to review it, so I really don't know and can't really articulate whether that's accurate or not. Since we allowed him to argue the case and present it, we'll give you 21 days to supplement your brief with anything regarding that case. I appreciate it. I may not need to. He may be correct on that point. I just don't know. However, Will you submit some comments at all? I'll follow what you're saying. I agree with that whole thing. So we're going to issue an order allowing 21 days? Yes. But regardless, even if those judicial admissions are taken into consideration, an overt act of pushing an aggressive act is not required. The act only requires that the dog cause an injury. So under count two, which is a 2-615, you're going to stand on your pleadings as they were when dismissed? Yes, sir. And then briefly as to negligence, LeBron's case, that whole thing was essentially that merely looking elsewhere is not considered a sufficient distraction. I don't believe that's what we have here. Well, is merely attempting to pet a dog a sufficient distraction? I think. I mean, what do you think the Supreme Court would say? Well, it's a little different because she's actually engaged in an action. She's stooping down to do it. But she hasn't actually petted the dog yet, has she? The dog's approaching her. She has stooped down to pet it. Right. Yes. But the dog isn't there yet. I think the dog is there. What's your point? No, I think the dog is there and she's stepped down to pet it, and then the dog moves into her and she steps back because of that. Okay. I don't like that. And with regard to the defense counsel's argument that this was voluntary, I'd refer again to the Kmart case. That customer came in voluntarily, bought the mirror, and voluntarily carried it out of the store. I think it's hand-in-hand. If there are any other questions, I'll be glad to answer it otherwise. I believe so. Thank you. Thank you. We'll take a matter of consideration, issue a order in due course.